Emmanuel Coffy (047132004)
emmanuel.coffy@coffylaw.com
COFFYLAW, LLC
515 Valley Street, Annex Bldg., Ste 1
Maplewood, New Jersey 07040
Telephone: (973) 996-2947
Facsimile: (973) 996-2952
Attorneys for Plaintiff
JOHN MOSHER

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN MOSHER,<br><br>          Plaintiff,<br><br>    v.<br><br>CHRISTOPHER MARTIN a/k/a DJ PREMIER, ILL KID MUSIC, INC., GURU PRODUCTIONS, INC, and JOHN DOE CORPORATIONS (fictitious defendants) and JOHN/JANE DOE (fictitious defendants)<br><br>          Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

JOHN MOSHER (hereinafter "John" or "Plaintiff" or "Mr. Mosher"), by and through his undersigned Attorneys, alleges as follows:

## NATURE OF THE ACTION

This is a civil action for: (1) copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq., seeking injunctive relief, damages, and attorney's fees and costs. The infringements concern works copyrighted by Plaintiff, JOHN MOSHER, who is an artist and producer with both common law copyright and one work registered under federal copyright (Registration No. SR 713-381). The alleged infringements were committed by above-named Defendants, within the jurisdiction of this Court; and (2) a civil action for trademark infringement and unfair competition arising under the Trademark Act of 1946, as amended (the Lanham Act),

15 U.S.C. §§ 1051 et seq., and the laws of New York, e.g., New York General Business Law § 349 (Deceptive acts and practices unlawful), which prohibits deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in the state; and New York General Business Law § 360-l (Infringement of registered mark; remedy), which provides a remedy for the infringement of a registered trademark, but its application is more limited compared to the federal Lanham Act. Plaintiff seeks injunctive relief, damages, and attorney's fees and costs for Defendant's unauthorized use of GANG STARR, which Plaintiff previously registered and used in commerce until 2019.

## I.    JURISDICTION AND VENUE

1. This is an action arising under the Copyright Act, 17 U.S.C. § 501.

2. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), and §1332(a) (complete diversity of the parties, and the amount in controversy exceeds $75,000.00), §2201 (declaratory relief), §2202 (further relief), §1338(a) as an action arising out of violations of the Copyright Act, as amended, 17 U.S.C. §§ 101 et seq.

3. Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b) (general venue provision) and 28 U.S.C. §§ 1400(a) because, upon information and belief, Defendants reside in this judicial district and a substantial part of the event mentions or omissions giving rise to the claims asserted in this action occurred in this district, causing damage to Plaintiff in this district.

## II.    THE PARTIES

4. JOHN MOSHER ("Plaintiff") is an artist, composer, producer who resides at 228 East Route 59 #328, Nanuet, NY 10954.

5. Upon information and belief, DJ Premier's studio is located at 34-12 36th St, Queens, NY 11106.

6. Upon information and belief, ILL KID MUSIC, INC. is a New York County corporation established on 10/05/1992. (See **Exhibit A**).

7. Upon information and belief, GURU PRODUCTIONS, INC. is a Bronx County corporation established on 10/05/1992. (See **Exhibit B**).

### III. BACKGROUND

8. In or about 2001, Plaintiff (sometimes referred to herein as "Plaintiff") and Keith Elam (a/k/a "Guru") commenced an enterprise for the purposes of composing, recording, publishing and performing original music. Said business continued until Guru's death on April 19, 2010.

9. Guru is also known as Gangstarr. He came to NYC in the mid to late '80s to pursue a Rapp career as an artist. He signed an independent label deal with wild pitch records as Gangstarr. He then found a demo from DJ Premier and added him as his DJ. Guru was an accomplished hip Hop producer in his own right. All Gangstarr songs/albums were DJ written by Guru and composed and produced by Guru and DJ premier and performed by Guru with the exception of albums " One of the Best Yet," which Plaintiff recorded, produced and composed (written lyrics of songs by Guru and Plaintiff). The Ownerz was produced by Plaintiff who co-wrote the lyrics and music. The song Battle from Eminem 8 mile soundtrack was co-produced and co-written by Plaintiff.

10. Guru's Jazzmatazz was Guru's side venture outside of Gangstarr and had nothing to do with premier. Guru released four (4) albums in the series. Guru wrote, composed and produced albums 1 through 3 in the series.

11. As for jazzmatazz vol 4, Guru brought Plaintiff as his business partner, touring partner, co-star performer and producer rapper director author to helm this classic landmark album. Plaintiff composed, produced, co-wrote the album as well as performed as an artist on album.

12. As for 7Grand catalog, Guru and Plaintiff recorded and performed as 7Grand so they were Guru and Plaintiff 7Grand. 7Grand is a brand, which stems from the business of Guru and

Plaintiff. 7Grand was and has never been a company/corporation. 7 Grand Records, 7 Grand Productions, 7 Grand Players, 7 Grand Jazzmatazz, and similar designations (collectively referred to herein as "7 Grand") are fictitious entities under which Guru (Keith Edward Elam) and Plaintiff conducted our business activities. These designations were used interchangeably to represent the collective creative and business ventures that Guru and I (Plaintiff) developed, operated, and controlled jointly, akin to how various artists and partnerships have used similar designations in the music industry.

**Examples from the Music Industry**:

- **Bad Boy Records**: Originally a label founded by Sean "Diddy" Combs, Bad Boy Records became synonymous with both its corporate identity and the brand under which artists like The Notorious B.I.G. and Faith Evans recorded.

- **Cash Money Records**: A fictitious label name associated with Lil Wayne and Birdman, Cash Money represents a brand that was jointly operated and used as a symbol of their musical endeavors.

13. Guru and Plaintiff made a large number of recordings of which five (5) albums were released from the Guru and Plaintiff collaboration.

14. The business of composing, recording, publishing and performance of such original music was conducted by Plaintiff and Guru in a manner, which is described herein as a "partnership," with all the indicia of the existence of a partnership, such as composing, production, publishing, and performance credits, and the division of advances and royalties.

15. After the death of Guru, litigation ensued in the Surrogate Court of the State of New York, County of Rockland, in which the Estate of Guru (referred to herein as the "Estate") sought the turnover by Plaintiff of certain intellectual property allegedly in Plaintiff's possession.

16. On March 12, 2014, a judgment was entered ordering Plaintiff to pay $169,850.36 to the Estate amongst other things.

17. The Surrogate Court also held that John Mosher was not an owner of, nor had an interest in the writings, drawings, designs, lyrics, notes created by Guru/Keith Elam and/or the recordings embodying Keith Elam/Guru's voice or image.

18. Mr. Mosher, Plaintiff, appealed said Judgment, which resulted in a Decision of the Appellate Division 2nd Dept. (the "DOAD" - **Exhibit C**) finding that the Estate did not sustain its burden as to its ownership and interest in certain intellectual property possessed by Plaintiff. More specifically the DOAD overturned the part of the Judgment that held that "Mosher, in effect, held no interest in any writings, drawings, designs, lyrics, or notes created by the decedent, and/or recordings embodying the decedent's voice and/or image." The DOAD determined that those determinations were "not supported by the record. Accordingly, the Surrogate Court should not have directed Mosher to in effect, deliver these assets to the Estate."

19. As such, this finding highlights a legal error in the Surrogate's Court decision, as to the distribution of the assets.

20. During the pendency of the Surrogate Court Proceeding (and continuing through the date of this action), Defendants received and accepted certain funds representing royalties payable in connection with the business activities conducted by Plaintiff and Guru. More specifically, the Defendants received royalties with respect to the Copyrights (listed in **Exhibit D**).

21. Since the DOAD, the Defendants individually or in concert have either facilitated or directly continue to receive, retain, and convert royalties that Plaintiff is entitled to receive.

22. As either the equal or exclusive owner of the "writings, drawings, designs, lyrics, or notes created by the decedent and/or any recordings embodying the decedent's voice and/or image," Plaintiff is entitled to income and royalties arising therefrom, but no payments on account of income and royalties have been received by Plaintiff.

23. By retaining and converting such royalty payments for their own use since the beginning of the Surrogate Court Proceeding, and since the DOAD, Plaintiff has reason to believe that the Defendants continued to receive payments.

24. As a result of the foregoing Plaintiff seeks an accounting regarding the royalties that are owed to Plaintiff but which have been received, retained, and converted exclusively by the Defendants since the start of the Surrogates Court Proceeding.

25. Should the Defendants produce an accounting that shows the payments they received, Plaintiff additionally seeks to compel the Defendants to immediately return the excess royalty income to Plaintiff and notify the sources of the royalty payments that all further payments shall be directed to Plaintiff either jointly or exclusively.

26. Since the DOAD, the Defendants have continued to receive, retain, and convert royalties that Plaintiff is entitled to.

27. Upon information and belief Defendants have also sold certain writings, drawings, designs, lyrics, or notes created by the decedent and/or any recordings embodying the decedents voice and/or image.

28. Defendants have wrongfully profited from the sale of Plaintiff's intellectual property including the licensing or sale of the Copyrights, and the property which was lawfully transferred to the Plaintiff by contract (see the Assignment of Masters as **Exhibit E**) and by operation of the DOAD.

29. Defendant Christopher Martin, p/s/a DJ Premier, has been named as a Defendant in this matter because of his wrongful conduct in connection with the unauthorized use of the Copyrights, and in connection with the unauthorized use of other copyrights that were transferred pursuant to

a limited transfer agreement (hereinafter referred to as the "Limited Copyrights") a copy of which is annexed hereto as **Exhibit D.**

30. Defendant DJ Premier in concert with the other Defendants, upon information and belief, has used, without proper authorization all or samplings of: (1) the Copyrights, (2) the Limited Copyrights, (3) songs from the following albums "One of the Best Yet", and "The Ownerz," and the song "Battle" (from the Eminem "8 Mile" soundtrack – all of the foregoing which were Plaintiff produced) in the production of the following works:

| Index | Title | Length |
|---|---|---|
| i. | "The Sure Shot" (Intro) | 1:23 |
| ii. | "Lights Out" (featuring M.O.P.) | 3:36 |
| iii. | "Bad Name" | 2:21 |
| iv. | "Hit Man" (featuring Q-Tip) | 2:22 |
| v. | What's Real" (featuring Group Home and Royce da 5'9") | 3:24 |
| vi. | "Keith Casim Elam" (Interlude) | 0:16 |
| vii. | "From a Distance" (featuring Jeru the Damaja) | 2:30 |
| viii. | "Family and Loyalty" (featuring J. Cole) | 4:34 |
| ix. | "Get Together" (featuring Ne-Yo and Nitty Scott) | 3:28 |
| x. | "NYGz / GS 183rd" (Interlude) | 1:10 |
| xi. | "So Many Rappers" | 2:11 |
| xii. | "Business or Art" (featuring Talib Kweli) | 2:59 |
| xiii. | "Bring It Back Here" | 0:50 |
| xiv. | "One of the Best Yet (Big Shug Interlude)" | 0:28 |
| xv. | "Take Flight (Militia, Pt. 4)" (featuring Big Shug and Freddie Foxxx) | 2:56 |
| xvi. | "Bless the Mic" | 2:35 |

31. Plaintiff recorded, produced and composed the albums "One of the Best Yet", and "The Ownerz." Said albums are collectively referred to herein as the "Albums."

32. It is worth noting that Plaintiff even has a cameo appearance in the video for the lead single from "The Ownerz" album, where he is prominently featured and is credited and thanked for his contributions to that album.

33. DJ Premier, in concert with the other Defendants, have not credited Plaintiff in any way for their use of Plaintiff's work. Nor has Plaintiff received any royalties or credit from Defendants' use of Plaintiff's works in Defendant DJ Premier's productions.

34. Furthermore, and upon information and belief, the Defendants have in fact wrongfully received royalties from DJ Premier's use of Plaintiff's "the Ownerz" and "One of the Best Yet."

35. As a result of the foregoing the Plaintiff has been damaged.

### IV.　　AS AND FOR A FIRST CAUSE OF ACTION
(Copyright Infringement)

36. Plaintiff repeats and re-alleges each and every fact, assertion and allegation contained in the preceding paragraphs of this Complaint as if they were fully set forth here at length.

37. Plaintiff is the owner of the copyright for the works titled Gangstarr "Life Fter Death," which has been registered with the United States Copyright Office under Registration No. SR 713-381. (See **Exhibit F).**

38. In addition to the federally registered work, Plaintiff has created a number of common law copyrighted works.

39. Despite Plaintiff's ownership of the copyrights, Defendants used the copyright and collected proceeds from the copyright as if they owned the copyrights thereby infringing upon Plaintiff's copyright, including unauthorized reproduction, distribution, performance, or display.

40. Plaintiff brings this cause of action for copyright infringement in violation of 17 U.S.C § 501.

41. Defendants knowingly and willfully infringed on Plaintiff's rights in the Copyrights and the Limited Copyrights, as well as the Albums and song described herein, without Plaintiff's authorization.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff JOHN MOSHER respectfully requests that the Court:

a.  Enter judgment in favor of Plaintiff and against Defendant for copyright infringement;

b.  Award injunctive relief to prevent further infringement of Plaintiff's copyrights;

c.  Award damages, including statutory damages under 17 U.S.C. § 504, actual damages, and any additional profits of Defendant attributable to the infringement;

d.  Award Plaintiff's costs and Attorney's fees pursuant to 17 U.S.C. § 505; and

e.  Grant such other and further relief as the Court may deem just and proper.

42.  Defendants, without Plaintiff's permission or authorization, have used a mark identical or confusingly similar to GANG STARR in connection with music, which is likely to cause confusion, mistake, or deception among consumers, contrary to 15 U.S.C. § 1114(1) and § 1125(a).

43.  Defendants' actions constitute willful infringement of Plaintiff's trademark rights and unfair competition, causing significant harm to Plaintiff's business reputation and goodwill associated with GANG STARR.

### V.     AS AND FOR A SECOND CAUSE OF ACTION
(Injunction)

44.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

45.  In light of the Appellate Division's decision, Plaintiff seeks a declaration that the assets in question are to be distributed in accordance with the Appellate Division's decision, which was not properly considered by the Surrogate Court.

46.  Plaintiff further seeks an order directing Defendants from benefiting from the assets, such as a re-evaluation of the assets' disposition or an injunction preventing the improper transfer of the assets.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court:

a. Declare that the assets in question are subject to distribution;

b. Order any further relief deemed necessary to correct the Surrogate Court's error and ensure the lawful distribution of the Defendants' assets; and

c. Award costs of this action and such other and further relief as the Court deems just and proper.

## VI. AS AND FOR A THIRD CAUSE OF ACTION
(Trade Mark Infringement)

47. Plaintiff, JOHN MOSHER, was the registered owner of the trademark GANG STARR (U.S. Registration No. 2,994,404) from Sept. 13, 2005 until 2019. This trademark was used in connection with musical sound recordings, musical video recordings, etc. (See **Exhibit G).**

48. Despite the expiration of the formal registration in 2019, Plaintiff has continued to use GANG STARR in commerce, thereby maintaining common law rights to the trademark under 15 U.S.C. § 1127 and relevant case law, including *Hana Financial, Inc. v. Hana Bank*, 574 U.S. 418 (2015), which recognizes the continued protection of trademarks under common law even after registration lapses, provided the mark is still in use.

### A. INFRINGEMENT BY DEFENDANTS

49. Defendants, without Plaintiff's permission or authorization, have been using a mark identical or confusingly similar to GANG STARR in connection with the same goods/services as described above, which is likely to cause confusion, mistake, or deception among consumers, contrary to 15 U.S.C. § 1114(1) and § 1125(a).

50. Defendants' actions constitute willful infringement of Plaintiff's trademark rights and unfair competition, causing significant harm to Plaintiff's business reputation and goodwill associated with GANG STARR.

### B. LEGAL AUTHORITY AND CAUSE OF ACTION

51. Plaintiff re-alleges and incorporates by reference all preceding paragraphs. Defendant's unauthorized use of GANG STARR constitutes trademark infringement in violation of 15 U.S.C. § 1114 and unfair competition under 15 U.S.C. § 1125(a), as well as under NY State's common law of unfair competition.

52. Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, to prevent further infringement and unfair competition by Defendant.

53. Plaintiff is entitled to recover Defendant's profits, any damages sustained by the Plaintiff, and the costs of the action under 15 U.S.C. § 1117.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a. Issue a permanent injunction, enjoining Defendants from any further use of GANG STARR or any other mark confusingly similar to Plaintiff's trademark;

b. Order an accounting of all gains, profits, and advantages derived by Defendant from the use of GANG STARR and award damages to Plaintiff, including treble damages for willful infringement;

c. Award Plaintiff the costs of this action and reasonable attorney's fees; and

d. Grant such other and further relief as the Court may deem just and proper.

### VII.   AS AND FOR A FOURTH CAUSE OF ACTION
(Unfair Competition Under New York Law)

54. In addition to the aforementioned federal claims, Plaintiff asserts a cause of action for unfair competition under the laws of New York. New York common law on unfair competition extends protection beyond registered trademarks to encompass any misappropriation of the labor, skills, expenditures, or goodwill of another, especially when such actions are likely to cause confusion or deceive consumers as to the source or origin of goods or services.

55. Defendants' unauthorized use of GANG STARR in connection with musical sound recordings, musical video recordings, etc. not only infringes upon Plaintiff's trademark rights but also constitutes unfair competition under New York law. This use misappropriates Plaintiff's goodwill and is likely to cause confusion, mistake, or deception with respect to the origin, sponsorship, or approval of Defendant's goods or services, thereby misleading consumers. The New York Court of Appeals has recognized unfair competition claims based on the likelihood of consumer confusion or deception regarding the origin, sponsorship, or approval of goods or services (see, e.g., *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 N.Y.S.2d 632 (N.Y. 1993)). Under this doctrine, Plaintiff is entitled to equitable relief and damages for the harm caused by Defendants' unfair competition.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff JOHN MOSHER respectfully requests that this Court:

a. Issue a permanent injunction, enjoining Defendant from any further use of GANG STARR or any other mark confusingly similar to Plaintiff's trademark, under both federal law and the laws of New York;

b. Order an accounting of all gains, profits, and advantages derived by Defendant from the use of GANG STARR and award damages to Plaintiff, including treble damages for willful

infringement, under both federal law and the laws of New York;

c.      Award Plaintiff the costs of this action, reasonable attorney's fees, and such other damages as are deemed appropriate under the laws of New York for the unfair competition claim; and

d.      Grant such other and further relief as the Court may deem just and proper, including equitable relief to prevent future harm to Plaintiff's business reputation and goodwill.

### VIII.   AS AND FOR A FOURTH CAUSE OF ACTION
(Conversion)

56.     Plaintiff repeats and re-alleges each and every fact, assertion and allegation contained in the preceding paragraphs of this Complaint as if they were fully set forth here at length.

57.      Defendants have collected royalties and benefitted from the unauthorized, unlawful and illegal use of Plaintiff's Copyrights and Trademarks as described herein.

58.     As a result of the foregoing Plaintiff has been damaged in a sum to be determined at trial but believed to exceed $300,000.

### PRAYER FOR RELIEF

**WHEREFORE,** for all of the foregoing reasons, it is respectfully requested that judgment is entered as to Plaintiff's claims against Defendant as follows:

a.      Permanent injunctive relief against Defendants, or persons in active concert or participation with them or persons acting on their behalf, prohibiting them from:

   (1) using the Marks, logos, trade dress, likenesses, or designs to falsely represent, or likely to confuse, mislead, or deceive members of the public that the services provided by Defendant are reviewed, approved, backed, affiliated, associated, connected, sponsored or endorsed by Plaintiff; and

(2) diluting the value of the IP and damaging Plaintiff's good will, reputation and business;

b.  A declaration that Defendants have no right to continue using Plaintiff's IP;

c.  Damages in an amount to be determined at trial, including, but not limited to, punitive damages;

d.  Treble damages;

e.  Attorney's fees, costs, appropriate interest and disbursements; and

f.  Such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands trial by jury on all claims so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure (FRCP).

By:  /s/ Emmanuel Coffy
      Emmanuel Coffy, Esq.
      NJ ID No. 047132004
      USPTO Reg. No. 63,615
      Attorneys for Plaintiff JOHN MOSHER