UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOHN MOSHER,

Plaintiff,

- against -

CHRISTOPHER MARTIN, *et al.*,

Defendants.
-----------------------------------------------------------x

**OPINION & ORDER**

No. 25-CV-5207 (CS)

Appearances:

Emmanuel Coffy
Coffylaw, LLC
Maplewood, New Jersey
*Counsel for Plaintiff*

Kristin Grant
Grant Attorneys at Law PLLC
New York, New York
*Counsel for Defendants Ill Kid Music, Inc. and Guru Productions, Inc.*

Seibel, J.

Before the Court is the motion of Defendants Ill Kid Music, Inc. and Guru Productions, Inc. for sanctions against Plaintiff John Mosher and his counsel Emmanuel Coffy. (ECF No. 31.) For the following reasons, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiff filed this action against Defendants alleging (1) copyright infringement pursuant to 17 U.S.C. § 101 *et seq.*; (2) trademark infringement and unfair competition under 15 U.S.C. § 1051 *et seq.*, and New York General Business Law §§ 349 and 360-1; and (3) conversion. (ECF No. 1 ("Complaint") at 1-2, 13.) All claims relate to works Plaintiff allegedly created with Keith Edward Elam, also known as "Guru" and "Gangstarr," until Elam's death on April 19, 2010. (*Id.* ¶¶ 8-9, 12.) On December 6, 2025, Plaintiff voluntarily dismissed this action pursuant to Federal

Rule of Civil Procedure ("FRCP") 41(a)(1)(A)(i), (ECF No. 29), and Defendants now move for sanctions, (ECF No. 31).

## A. Litigation History

Since Elam's death, Plaintiff has been involved in extensive litigation relating to Elam's estate (the "Estate").

### 1. 2014 Decision of New York State Surrogate's Court, Rockland County

On February 3, 2014, the Rockland County Surrogate's Court issued a decision regarding Elam's property, (ECF No. 32-1 at 2-4 ("2014 Surrogate's Court Decision")), noting that it had "serious concerns with the apparent persistent, pervasive, material and intentional misrepresentations by, and the resulting lack of credibility of" Plaintiff, (*id.* at 2).[1] The court issued a decree on March 12, 2014, (ECF No. 32-1 at 5-11 ("2014 Surrogate's Court Decree")), holding that Plaintiff did not own, nor hold any interest in, "any writings, drawings, designs, lyrics or notes created by Keith Elam and/or any rights thereto" or any recordings embodying Guru's voice and/or image, (*id.* at 6-7). Additionally, the court noted that Plaintiff had no interest or rights in trademarks for the "GangStarr," "Gang Starr," "Jazzmatazz," or "Guru's Jazzmatazz" names or logos, and that neither Elam, nor any of the entities he controlled, transferred or gave these trademarks to Plaintiff. (*Id.* at 8-9.) The Surrogate's Court also permanently restrained and enjoined Plaintiff from "any involvement with or, directly or indirectly, utilizing, licensing or conveying" these names, logos, and/or trademarks and/or any rights thereto to any entity or person, except the Estate. (*Id.* at 7.) The court also held that the Estate owned Ill Kid Music, Inc., Guru Productions, Inc., and Gang Starr Productions, Inc., and

[1] Citations to ECF No. 32-1 use the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

that Plaintiff had no shares, ownership interests, or rights to these entities. (*Id.* at 7-8.) Finally, the court ordered Plaintiff to pay the Estate $169,850.36 to reimburse it for unauthorized transactions he had conducted. (*Id.* at 10.)

2. <u>2016 Appellate Division, Second Department, Decision</u>

On June 1, 2016, the Appellate Division affirmed in part and modified in part the Surrogate's Court's decree. (*See id.* at 6-7, 9-11; *see also* ECF No. 32-2 ("2016 Appellate Division Decision").) It affirmed as supported by the record the Surrogate's Court's "factual and credibility determinations" regarding "the estate's ownership interest in certain corporations and trademarks" and "Mosher's alleged wrongful conversion of certain funds belonging to the estate." (2016 Appellate Division Decision at 2.) But the Appellate Division found that the Surrogate's Court's findings that Plaintiff had no interest in the writings, drawings, designs, lyrics or notes created by Elam, or any recordings embodying his voice or image, were not supported by the record, and neither was its holding that Plaintiff improperly received money from Elam's AFTRA Health Fund Group Life Insurance Policy and AFTRA retirement fund. (*Id.*) As a result, the Appellate Division reduced the amount Plaintiff owed to the Estate to $114,162.36. (*Id.* at 1.) Plaintiff acknowledges both the Surrogate's Court and Appellate Division decisions in his complaint. (Complaint ¶¶ 17, 18.)

3. <u>2017 New York Supreme Court, New York County, Action</u>

On March 30, 2017, Plaintiff filed an action in New York State Supreme Court, New York County, against the Estate, among other defendants. (ECF No. 32-3 ("2017 State Court Action").) In his complaint, Plaintiff claimed that he had been "adjudicated as the owner" of certain writings, drawings, designs, lyrics, notes and recordings created by or embodying the voice/image of Elam and was "entitled to income and royalties derived therefrom." (*Id.* ¶ 32.)

The docket notes that case's status is "Pre-RJI," *see Mosher v. Estate of Keith Elam, et al.*, No. 651674/2017 (Sup. Ct. N.Y. Cnty. 2017), meaning that a request for judicial intervention has not been made and thus a judge has not been assigned and no action has been taken, *see* N.Y. Comp. Codes R. & Regs. tit. 22, § 202.6; Getting a Judge Assigned to Your Case (RJI), N.Y State Unified Court Sys., https://www.nycourts.gov/help/representing-yourself-court/getting-judge-assigned-your-case-rji (last visited Oct. 29, 2026).

4. <u>2018 New York Supreme Court, Rockland County, Action</u>

On November 15, 2018, Plaintiff commenced an action in the New York State Supreme Court, Rockland County, against the Estate and the AFTRA Retirement Fund. (ECF No. 32-4 ("2018 State Court Action").) Plaintiff claimed that the Appellate Division had held that the Estate was not entitled to the AFTRA benefit payments and contended that AFTRA should be making the payments to Plaintiff. (*Id.* ¶¶ 16-18.) This action also is pending in pre-RJI status. *See Mosher v. AFTRA Retirement Fund, et al.*, No. 036801/2018 (Sup. Ct. Rockland Cnty. 2018) (docket indicates case's status is "Pre-RJI").

5. <u>2022 Southern District of New York Bankruptcy Court Order</u>

In 2018, Plaintiff filed for bankruptcy. *See In re Mosher*, No. 18-BK-22063 (Bankr. S.D.N.Y. 2018). During those proceedings, the Estate filed an adversary proceeding and on March 21, 2022, obtained an order denying Plaintiff's discharge based on his failure to disclose substantial assets. (*See* ECF No. 32-5 ("2022 Bankruptcy Order").)

6. <u>2022 Southern District of New York Action</u>

On November 11, 2022, Plaintiff commenced an action in this Court against the Estate and Christopher Martin – who had been Guru's DJ – among other defendants. *See Mosher v. Veyda, et al.*, No. 22-CV-9632 (S.D.N.Y. 2022) (the "2022 S.D.N.Y. Action"). I granted

Defendants' motion to dismiss Plaintiff's Third Amended Complaint in its entirety and denied leave to amend. *See Mosher v. Veyda*, No. 22-CV-9632, 2024 WL 4932621, at *10-11 (S.D.N.Y. Dec. 2, 2024) ("2022 S.D.N.Y. Dismissal Order"), *appeal dismissed*, No. 25-582, (2d Cir. Jan. 21, 2026). I found, among other things, that Plaintiff's claim of ownership of the trademarks was precluded by the Surrogate's Court and Appellate Division decisions; that Plaintiff had failed to adequately plead the trademark claims in any event because he did not describe any infringing activity or confusion; that Plaintiff lacked standing to pursue the copyright infringement claims; and that he had failed to adequately plead those claims in any event because he did not identify any infringing acts, responsible parties or relevant time period. (*Id.* at *5-8.)[2] Mr. Coffy represented Plaintiff in that action. (2022 S.D.N.Y. Action, ECF Nos. 42, 47.)

7. <u>2025 Second Circuit Appeal</u>

On March 11, 2025, Plaintiff appealed the 2022 S.D.N.Y. Dismissal Order. *See* Notice of Appeal, *Mosher v. Veyda, et al.*, No. 25-582 (2d Cir. Mar. 11, 2025), ECF No. 1 ("Notice of Appeal"). Mr. Coffy represented Plaintiff on the appeal, (*id.*), which stalled for approximately a year while Plaintiff claimed that he was awaiting transcripts from the 2022 S.D.N.Y. Action – despite there being no such transcripts, as the motion was decided on the papers. *See* No. 25-582, ECF Nos. 19-22. By order dated December 8, 2025, the Second Circuit noted Plaintiff's

[2] I declined to dismiss the trademark claims for lack of subject matter jurisdiction under the doctrine of substantiality, pursuant to which "federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 20-CV-6158, 2024 WL 4263205, at *5 (S.D.N.Y. Sep. 23, 2024) (emphasis omitted). While the claims were meritless, I found that they did not "sink to the level of absolutely devoid of merit or inescapably frivolous," as required to implicate the doctrine. 2022 S.D.N.Y. Dismissal Order at *4.

failure to comply with its November 21, 2025 order that Plaintiff file a transcript status update by December 5, 2025, and dismissed the appeal effective January 20, 2026, unless Plaintiff filed his opening brief by that date. No. 25-582, ECF No. 24. That did not occur, and the appeal was dismissed. *See* No. 25-582, ECF No. 27 ("Second Circuit Dismissal").

8. The Instant Action

On June 23, 2025, Plaintiff filed his complaint in this case, bringing claims for copyright infringement, trademark infringement, unfair competition and conversion. (Complaint at 1-2, 13.)

On August 21, 2025, attorney Kristin Grant appeared for Defendants Ill Kid Music, Inc. and Guru Productions, Inc. (ECF No. 12.) On August 28, 2025, non-party Denise Sandoval filed a letter stating that she was the registered owner of those entities and did not authorize Ms. Grant to represent them. (ECF No. 16 at 1.)[3] Among other documents, she attached cover letters from the New York Department of State ("DOS") addressed to Ms. Sandoval and apparently enclosing the summons and complaint in this action, (*id.* at 9-10), a cease-and-desist letter from Ms. Sandoval to Ms. Grant, (*id.* at 2), and an attorney grievance complaint Ms. Sandoval filed against Ms. Grant, (*id.* at 7-8).

On September 14, 2025, Plaintiff filed a motion to disqualify Ms. Grant. (ECF No. 15.) Plaintiff attached an affidavit by Ms. Sandoval, in which she states she is the Chief Executive Officer of the corporate Defendants, and that neither she, nor any officer, director or manager, had retained Ms. Grant to represent them. (ECF No. 15-2 at 2-3.)[4] I denied the motion without

---

[3] Citations to ECF No. 16 use the page numbers generated by the Court's ECF system.

[4] Citations to ECF No. 15-2 use the page numbers generated by the Court's ECF system.

prejudice for failure to comply with my pre-motion letter requirement and scheduled a pre-motion conference for October 14, 2025. (ECF No. 17.)

On October 7, 2025, Defendants filed a letter in opposition. (ECF No. 20.) They noted that the complaint involved "substantially the same parties and claims" as those in the dismissed 2022 S.D.N.Y. Action. (*Id.* at 1.) They also claimed that Ms. Sandoval's biennial statements filed with the DOS, in which she described herself as the CEO of Defendants, were fraudulent; that the address she provided on those documents was the same address listed by Plaintiff on other documents; and that Ms. Grant was properly engaged via an engagement letter signed by Keith C. Elam, the authorized signatory for Defendants.[5] (*Id.* at 1-2.) Defendants attached two emails – one dated August 22, 2025 and the other dated August 23, 2025 – from Plaintiff to Ms. Grant threatening criminal charges and an attorney grievance against her for appearing as defense counsel. (ECF No. 20-2.) On August 22, 2025, according to Ms. Grant and undisputed by Plaintiff, Plaintiff called her office and asked to speak with her regarding a formal grievance against her, but she was not available. (ECF No. 20 at 1-2.) Finally, Defendants theorized that Plaintiff and Ms. Sandoval were colluding in hopes of generating a default judgment against Ill Kid Music, Inc. and Guru Productions, Inc. (*Id.* at 2.)

On October 14, 2025, the Court held the pre-motion conference.[6] Mr. Coffy claimed that Ms. Sandoval is the owner of Defendants based on the DOS website, while being unable to explain why that website, which concededly reflected information provided by Ms. Sandoval, would trump the Appellate Division decision upholding the Surrogate's Court finding that the Estate owned the corporations. Defendants represented that they were updating the website to

---

[5] Keith C. Elam seems to be Keith Edward Elam's son.

[6] My recitation of the events at the October 14, 2025 proceeding is based on my recollection, my notes and my law clerk's detailed notes.

reflect the Estate as the owner. Additionally, when the Court asked Mr. Coffy why the claims in this case were not precluded by the 2022 S.D.N.Y. Action, he responded that he had filed an appeal[7] and that Defendants were not parties to that action. The Court explained that the claims were still precluded because Plaintiff was a party. Mr. Coffy was unable to explain why he had repeatedly told the Second Circuit that he was awaiting transcripts from the district court, when there were no such proceedings to be transcribed. The Court warned Mr. Coffy that he was "getting into Rule 11 territory," and that the Appellate Division had not said that Plaintiff owned the trademarks – just that the Estate had not proven that he did not. The Court was unconvinced that Ms. Grant should be disqualified at that time, but set a briefing schedule for Plaintiff's amended complaint, Defendants' motion to dismiss and Plaintiff's cross-motion to disqualify.

On November 13, 2025, Plaintiff filed a motion to withdraw his complaint without prejudice and without fees or costs pursuant to FRCP 41(a)(2). (ECF No. 22.) The Court deferred ruling on the motion and, noting that Plaintiff had already been granted leave to amend, directed Plaintiff to explain the sentence in his motion regarding his intent to "pursue alternative resolution or to refile a streamlined pleading that aligns parties and claims and to prosecute narrowed, non-precluded claims in a streamlined action." (ECF No. 23.) Plaintiff responded that by "alternative resolution" he meant contractual alternative dispute resolution and by "streamlined pleading" and "non-precluded claims" he meant dropping precluded, duplicative or immaterial claims, aligning the parties, and focusing on a limited set of claims. (ECF No. 24 at 2.) Defendants responded that they have no contractual obligation to enter alternative dispute

---

[7] It does not appear to have been discussed, but it is the law, that "*res judicata* and collateral estoppel apply once final judgment is entered in a case, even while an appeal from that judgment is pending." *Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998).

resolution with Plaintiff, nor had they discussed or agreed to such proceedings; moved for sanctions under FRCP 11 and 28 U.S.C. § 1927; and requested a pre-filing injunction. (ECF No. 25 at 1.) On November 22, 2025, the Court denied Plaintiff's motion, citing undue vexatiousness, the duplicative expense of relitigation, and the inadequacy of Plaintiff's explanation. (ECF No. 26.)

On November 25, 2025, Plaintiff filed a notice of voluntary dismissal pursuant to FRCP 41(a)(1)(A)(i), but it was rejected by the Clerk due to a filing error. (ECF No. 27.) The same thing happened on November 26, 2025. (ECF No. 28.) On December 6, 2025, Plaintiff successfully filed the notice. (ECF No. 29.)

According to Ms. Grant, on March 12, 2026, Mr. Coffy, acting as Ms. Sandoval's attorney, contacted Ms. Grant seeking a settlement to avoid further litigation relating to the ownership of Defendants Ill Kid Music, Inc. and Guru Productions, Inc. (ECF No. 32-6 at 1-2.)

On March 25, 2026, those entities filed the instant motion. (ECF Nos. 31-32.) Plaintiff chose not to respond on the merits, instead requesting on April 7, 2026, that the Court determine whether Ms. Grant was duly authorized to file the motion. (ECF No. 33.) Defendants replied on April 14, 2026. (ECF No. 34.)

## II. DISCUSSION

Defendants move for sanctions pursuant to 28 U.S.C. §§ 1651 and 1927, the Court's inherent power, and FRCP 65(d)(2)(C). (ECF No. 32 ("Ds' Mem.") at 1, 10.) They seek an order requiring (1) Plaintiff and Mr. Coffy to pay for Defendants' attorneys' fees and costs in connection with this action, including this motion; (2) Plaintiff to obtain leave of this Court before filing any additional action in this District or any court in the State of New York relating to any claim of ownership in the trademarks "Gangstarr," "Gang Starr," "Jazzmatazz," or

"Guru's Jazzmatazz," or any claim of ownership in Ill Kid Music, Inc., Guru Productions, Inc., or Gang Starr Productions, Inc., or any claim to royalties or other income from those entities, or any claim arising from or related to the Estate; and (3) that Plaintiff's pre-filing restrictions extend to all persons acting in active concert or participation with him, including Ms. Sandoval. (*Id.* at 16-17.)

"It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990); *see Jones v. Haynes*, No. 24-CV-7098, 2025 WL 1127183, at *2 (S.D.N.Y. Apr. 16, 2025) ("Courts regularly retain jurisdiction after voluntary dismissal to adjudicate motions for sanctions pursuant to Section 1927 . . . .").[8] "Collateral issues" include requests for attorneys' fees and whether sanctions are appropriate as a result of attorney misconduct, because these are "independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170 (1939); *see Cooter & Gell*, 496 U.S. at 395.

### A. <u>Defendants' Counsel's Authority to Appear</u>

As an initial matter, instead of responding substantively to Defendants' motion, Plaintiff requested that the Court first determine whether Ms. Grant had the authority to appear on behalf of Defendants. (ECF No. 33 ("P's Mem.") at 1.) In support, Plaintiff supplied an affidavit of Ms. Sandoval in which she claims that she is authorized to speak on behalf of Defendants, and that neither she nor any officer, director or manager of Defendants retained Ms. Grant. (ECF No. 33-1 at 2-3.)[9] Ms. Sandoval did not explain how she came to be CEO of the Defendant

---

[8] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

[9] Citations to ECF No. 33-1 use the page numbers generated by the Court's ECF system.

corporations. She attached as an exhibit Defendants' "Entity Information" from the DOS website, listing Ms. Sandoval as CEO. (ECF No. 33-1 at 6-9.) Based on this affidavit, Plaintiff claims that there is "indisputably" a dispute of material factual over Ms. Grant's authority to represent Defendants. (P's Mem. at 1.) The documents, reflecting information seemingly provided to DOS some time before October 31, 2016,[10] merely reflect the contents of the statement each New York corporation is required to file every two years pursuant to N.Y. Bus. Corp. Law § 408. It does not represent any finding by DOS and means no more than that someone told DOS that Ms. Sandoval was CEO; it does not make it so. And even if the "entity information" provided to DOS were somehow controlling, the "entity information" at the time the motion was filed shows "Keith Casim Elam" as CEO.[11]

What does tell the Court something about who controls Ill Kid Music, Inc. and Guru Productions, Inc. is the 2016 Appellate Division decision, which affirmed the Surrogate's Court determination that the Estate is the owner of Defendants and that Plaintiff never had any shares or other ownership interest in them. (2016 Appellate Division Decision at 2; 2014 Surrogate's Court Decree at 7-8.) As the owner, the Estate, not Ms. Sandoval, has the authority to retain counsel. The Court has no reason to doubt Ms. Grant's representation that the corporations did

---

[10] The documents list the "statement status" as "past due date," and states that the "next statement due date" is October 31, 2016, suggesting that the document was generated before that date. (ECF No. 33-1 at 6, 8.)

[11] Plaintiff's motion was filed on April 7, 2026, (ECF No. 33), and the DOS website reflects that the amended CEO information for Guru Productions, Inc. and Ill Kid Music, Inc. was filed on November 13, 2025. *See* Entity Information for Guru Productions, Inc., N.Y. Dep't of State, Div. of Corps., https://apps.dos.ny.gov/publicInquiry/EntityDisplay (last visited Oct. 29, 2026) (for CEO information, click hyperlink, enter entity name, and select corporation from entity list, and for the filing date of the amended CEO information select the "filing history" tab); Entity Information for Ill Kid Music, Inc., N.Y. Dep't of State, Div. of Corps., https://apps.dos.ny.gov/publicInquiry/EntityDisplay (last visited Oct. 29, 2026) (same).

so, (*see* ECF No. 20 at 1),[12] especially in light of the evidence indicating that Ms. Sandoval has filed fraudulent biennial statements, (*see* ECF No. 20-1 at 24, 26, 51, 53).[13] Plaintiff is well aware of, and cites in his complaint, the decisions confirming that the Estate is Defendants' lawful owner. (Complaint ¶¶ 17-18.) Therefore, contrary to Plaintiff's contention, no dispute of material fact exists as to whether Ms. Grant validly appeared, and no factual development or hearing is necessary. *See Bridges v. Corr. Servs.*, No. 17-CV-2220, 2019 WL 917152, at *2 (S.D.N.Y. Feb. 25, 2019) (denying motion because plaintiff's "mere speculations are insufficient to meet the heavy burden faced by plaintiff in moving for disqualification"); *Saftler v. Gov't Emps. Ins. Co.*, 465 N.Y.S.2d 20, 23 (App. Div. 1983) (declining to grant evidentiary hearing where there is no substantial issue of fact); *cf. Gibson, Dunn & Crutcher LLP v. Koukis*, 44 N.Y.3d 25, 30 (2025) (granting evidentiary hearing because factual dispute exists as to whether counsel validly waived defendant's jurisdictional defenses).

In any event, as Defendants mention, Plaintiff's motion is untimely because the Court previously provided Plaintiff with the opportunity to brief his disqualification motion, and he elected to voluntarily dismiss the action instead. (ECF No. 34 ("Ds' Reply") at 1-2.) *See Secured Worldwide, LLC v. Kinner*, No. 15-CV-1761, 2015 WL 4111325, at *6 (S.D.N.Y. June 24, 2015) (right to move for disqualification can be waived after delay of just two months when party "sat on [his] rights").

---

[12] Nor can it imagine why Ms. Grant, or any lawyer, would insert herself into a representation without authorization from the client and therefore without expectation of payment.

[13] Citations to ECF No. 20-1 use the page numbers generated by the Court's ECF system.

In sum, Plaintiff's response further buttresses Defendants' motion for sanctions because his baseless arguments appear to be advanced for some improper purpose, which continues to waste both the Court and Defendants' time and resources.

### B. Attorneys' Fees: 28 U.S.C. § 1927 & Inherent Powers

Although Plaintiff has eschewed his opportunity to oppose on the merits, the Court addresses them. *See Piccolo v. Top Shelf Prods., Inc.*, No. 16-CV-6930, 2018 WL 4374914, at *2 (E.D.N.Y. Sep. 13, 2018) (while court could grant sanctions motions as unopposed, it "will nevertheless examine the merits of the motions"); *Sulzer Mixpac USA, Inc. v. Shanghai NSJ Hardware Ltd.*, No. 09-CV-9705, 2013 WL 5997707, at *3 (S.D.N.Y. Nov. 13, 2013) ("Although NSJ has not opposed the instant motion for contempt sanctions, the Court has the responsibility to ensure that the damages and fine sought by Sulzer are appropriate."), *report and recommendation adopted*, 2014 WL 793086 (S.D.N.Y. Feb. 25, 2014).

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The purpose of Section 1927 sanctions is "to deter unnecessary delays in litigation," *Bowler v. U.S. Immigr. & Naturalization Serv.*, 901 F. Supp. 597, 604 (S.D.N.Y. 1995), and they "are not to be lightly imposed; nor are they to be triggered because a lawyer vigorously and zealously pressed his client's interests," *Colucci v. N.Y. Times Co.*, 533 F. Supp. 1011, 1013-14 (S.D.N.Y. 1982). Instead, "[t]he section is directed against attorneys who willfully abuse judicial processes." *Id.* at 1014.

"The only difference between a sanctions award under § 1927 and a court's inherent power is that 'awards under § 1927 are made only against attorneys or other persons authorized

to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'" *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). "To impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000). Sanctions may include fees for the underlying litigation and the sanctions motion itself. *See Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 148 (2d Cir. 2012); *Rasmy v. Marriott Int'l, Inc.*, No. 16-CV-4865, 2024 WL 1676357, at *3 (S.D.N.Y. Apr. 18, 2024).

Defendants argue that they are entitled to attorneys' fees under 28 U.S.C. § 1927 against Mr. Coffy and the Court's inherent power against Plaintiff in connection with this action. (Ds' Mem. at 13-15, 17.)

1. <u>28 U.S.C. § 1927 Sanctions: Mr. Coffy</u>

First, Mr. Coffy advanced wholly meritless claims. As mentioned, the Appellate Division confirmed that the Estate owns the Defendant corporations and trademarks at issue. (2016 Appellate Division Decision at 2; 2014 Surrogate's Court Decree at 7-8.) Additionally, Mr. Coffy represented Plaintiff in the 2022 S.D.N.Y. Action, where his trademark claims were dismissed as precluded by collateral estoppel and *res judicata*, and his copyright claims were dismissed with prejudice. 2022 S.D.N.Y. Dismissal Order at *5-8, 11.[14] He also represented Plaintiff on, and failed to pursue, the Second Circuit appeal. *See* Notice of Appeal; Second

[14] While I found that asserting the trademark claims in the 2022 S.D.N.Y Action did not sink to the level of "absolutely devoid of merit or inescapably frivolous," 2022 S.D.N.Y. Dismissal Order at *4, asserting them a second time surely does.

Circuit Dismissal. Nevertheless, while the appeal was pending, he filed the instant lawsuit asserting the same precluded claims.[15] Thus, there is clear evidence that Mr. Coffy advanced entirely colorless claims. *See Papaya Gaming, Ltd. v. Fair Play for Mobile Games*, No. 25-CV-5573, 2026 WL 558698, at *13 (S.D.N.Y. Feb. 27, 2026) (imposing sanctions under § 1927, FRCP 11 and inherent authority because claims had been litigated twice before the court and were identical to claims dismissed in another action).

Second, Mr. Coffy acted in bad faith. As counsel of record, Mr. Coffy was aware that Plaintiff's claims were barred and nevertheless filed a duplicative lawsuit. At the October 2025 conference, Mr. Coffy failed to offer any legitimate explanation as to why these claims were not precluded, and even after voluntarily dismissing this case, Mr. Coffy continued to pursue them in bad faith by contacting Defendants' counsel, now on behalf of Ms. Sandoval, seeking a settlement regarding the same claims. (ECF No. 32-6.) "Given the utter lack of merit of

[15] The copyright claims were precluded by the 2022 S.D.N.Y Action, and the trademark claims were twice precluded, by the 2016 Appellate Division decision affirming the 2014 Surrogate's Court decision and by the 2022 S.D.N.Y. Action. Filing the same claims after they were dismissed and leave to amend was explicitly denied violated the previous order and was "improper for that reason alone." *Kenyatta v. Rowson*, No. 25-CV-729, 2025 WL 3157775, at *1 (S.D.N.Y. Nov. 12, 2025). More fundamentally, re-filing the same claims was plainly barred by *res judicata*, which prohibits a plaintiff from bringing against the same defendant, or its privy, a claim that was dismissed with prejudice in a prior litigation, *see Griffith-Fenton v. JPMorgan Chase/Chase Home Fin.*, No. 15-CV-4108, 2015 WL 10850340, at *4 (S.D.N.Y. Nov. 12, 2015), and/or by collateral estoppel, which bars a plaintiff from re-litigating against a different party an issue already determined against him by a prior judgment, *see Zucker v. HSBC Bank, USA, N.A.*, No. 21-CV-4825, 2022 WL 16755604, at *8 (E.D.N.Y. Aug. 1, 2022), *report and recommendation adopted*, 2022 WL 16549134 (E.D.N.Y. Oct. 31, 2022). These concepts "serve the important purposes of preserving the finality of judicial determinations and conserving resources – judicial and litigant alike," and also "promote[] respect for the law, engender[] public confidence in the adjudicatory process, and protect[] litigants from vexatious and repetitive litigation." *Overview Books, LLC v. United States*, 755 F. Supp. 2d 409, 412 (E.D.N.Y. 2010), *aff'd*, 438 F. App'x 31 (2d Cir. 2011) (summary order). They are part of first-year civil procedure classes and are hardly obscure or esoteric. Indeed, even a non-lawyer should be easily able to understand that you cannot keep bringing the same lawsuit over and over.

[Plaintiff's] claims," the unreasonable numerous litigations, the suggestion of a forthcoming lawsuit, and the unfounded disqualification motion, the Court can conclude "that [Mr. Coffy's] actions were undertaken for some improper purpose." *Vishipco Line v. Charles Schwab & Co.*, No. 02-CV-7915, 2003 WL 1345229, at *11 (S.D.N.Y. Mar. 19, 2003); *cf. Costello v. Int'l Bus. Machines Corp.*, No. 02-CV-5870, 2006 WL 2370246, at *4 (S.D.N.Y. Aug. 16, 2006) (declining to find bad faith because it was reasonable for plaintiff's counsel to believe actions were not barred by collateral estoppel). It is hard to fathom any reason other than harassment for Mr. Coffy filing plainly precluded claims. As such, Mr. Coffy acted in bad faith, and Defendants are entitled to attorneys' fees against him.

2. <u>Court's Inherent Power Sanctions: Plaintiff</u>

Sanctions are also warranted against Plaintiff because his claims are without color and he acted in bad faith. First, as discussed, Plaintiff's allegations regarding his ownership of Defendants and entitlement to trademarks and copyrights are precluded, yet he re-filed a new lawsuit pursuing those claims. In total, he has filed four meritless lawsuits, has taken meritless positions in two other lawsuits, and has repeatedly mischaracterized the findings of other courts to manufacture a basis for his otherwise nonviable claims. As such, his claims are without color. *See Vishipco Line*, 2003 WL 1345229, at *11 (claims are meritless where they are barred by collateral estoppel and *res judicata*).

Second, Plaintiff acted in bad faith. Plaintiff was aware that his claims were precluded, yet he continued to file lawsuits based on the same claims in different courts and against various defendants. Additionally, Defendants assert that it appears he filed fraudulent biennial statements, or aided and abetted in the same, to establish his purported ownership of Defendants, (ECF No. 20 at 1; *see* ECF No. 20-1), and has also threatened Defendants' counsel with baseless

criminal charges and disciplinary grievances, (ECF No. 20 at 1-2; *see* ECF No. 20-2). Plaintiff's actions suggest that he brought these claims in bad faith, for the purpose of harassment, and Defendants are also therefore entitled to attorneys' fees against him. *See Papaya Gaming*, 2026 WL 558698, at *13 (awarding sanctions against plaintiff and its counsel for acting in bad faith by attempting to make lawsuit "appear less duplicative"); *Nadler v. Princess Hotels Int'l, Inc.*, No. 94-CV-6986, 1996 WL 219639, at *4 (S.D.N.Y. Apr. 30, 1996) (finding defendant and defendant's counsel jointly and severally liable for the reasonable costs and fees incurred by plaintiff's counsel in making sanctions motion), *aff'd sub nom. Nadler v. Bigham Englar Jones & Houston*, 129 F.3d 114 (2d Cir. 1997) (summary order).

Given that both Plaintiff and his attorney advanced frivolous arguments in bad faith, Defendants are entitled to have their attorneys' fees for this case paid by Plaintiff and Mr. Coffy, jointly and severally. No later than November 13, 2026, Defendants are directed to submit an affidavit, with underlying records, documenting the costs and fees in connection with this action, in accordance with the requirements for such applications. *See, e.g.*, *Sound Around, Inc. v. Friedman*, No. 24-CV-1986, 2026 WL 2075998, at *2-3 (S.D.N.Y. July 17, 2026). Plaintiff and Mr. Coffy may respond no later than November 27, 2026, addressing only the reasonableness of the requested fee.

### C. <u>Filing Restrictions: 28 U.S.C. § 1651</u>

The All Writs Act, 28 U.S.C. § 1651, codifies the court's "ancient" power to "restrict the litigation of abusive and vexatious litigants." *Butler v. City of N.Y.*, No. 15-CV-3783, 2021 WL 4306888, at *1 (S.D.N.Y. Aug. 16, 2021). "The issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless,

frivolous, vexatious or repetitive proceedings." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000).

In assessing whether to restrict a litigant's access to the courts, courts consider:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986); *see Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (*per curiam*). Ultimately, the court must determine whether the litigant is "likely to continue to abuse the judicial process and harass other parties." *Safir*, 792 F.2d at 24.

Defendants request that the Court enter an order requiring Plaintiff to obtain leave of this Court before filing any additional action in this District or in New York State courts relating to any claim of ownership in the trademarks "Gangstarr," "Gang Starr," "Jazzmatazz," or "Guru's Jazzmatazz," or any claim of ownership in Ill Kid Music, Inc., Guru Productions, Inc., or Gang Starr Productions, Inc., or any claim to royalties or other income from those entities, or any claim arising from or related to the Estate. (Ds' Mem. at 17.)

1. Southern District of New York Pre-Filing Injunction

First, Plaintiff has a history of undue vexatiousness. Following the 2016 Appellate Division decision, Plaintiff filed two additional lawsuits in New York State courts in 2017 and 2018 that misrepresented the Appellate Division's findings. (*See* 2017 State Court Action; 2018 State Court Action.) He also misled the Bankruptcy Court in 2018, initiated the baseless 2022 S.D.N.Y. Action, failed to pursue his Second Circuit appeal and misled that tribunal. (*See* 2022

Bankruptcy Order.) *See* 2022 S.D.N.Y. Dismissal Order; Second Circuit Dismissal. And, obviously, Plaintiff brought the instant action against Defendants, alleging claims precluded by the 2022 S.D.N.Y. Action. (*See* Complaint.) "[T]here is no strict numerosity requirement that must be met to enjoin a litigant from filing future actions;" instead, "the court must consider the record as a whole and the likelihood that the litigant will continue to abuse the judicial process." *Carrington v. Graden*, No. 18-CV-4609, 2020 WL 5503537, at *5 (S.D.N.Y. Sep. 11, 2020) (finding first factor met where plaintiff filed only two frivolous lawsuits but record detailed evidence fabrication, refusing to appear in court, and evidence suggesting a future third lawsuit); *see Avent v. Platinum Plus Auto Prot.*, No. 19-CV-1494, 2022 WL 3585764, at *8 (N.D.N.Y. Aug. 22, 2022) ("[M]ost courts that have enjoined future filings have done so after a greater number of redundant complaints than four."). Because Plaintiff initiated four baseless lawsuits and took baseless positions in others, and because the evidence suggests a forthcoming lawsuit (albeit through Ms. Sandoval), this factor favors a pre-filing injunction.

Second, Plaintiff lacked good faith in pursuing this litigation. Plaintiff must have been aware that his claims had already been dismissed with prejudice, yet he brought them again – against a backdrop in which he had already advanced meritless lawsuits by misrepresenting other courts' decisions. Thus, this factor favors a pre-filing injunction because Plaintiff does not have an objective good faith belief that he will prevail. *See Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 715 (2d Cir. 2019) (*per curiam*) (affirming finding of no good faith basis for bringing action when "similar, if not identical, prior actions" were previously dismissed).

Third, Plaintiff is counseled, which also weighs in favor of a pre-filing injunction. *See Ulysses I & Co. v. Feldstein*, No. 01-CV-3102, 2002 WL 1813851, at *14 (S.D.N.Y. Aug. 8, 2002), *aff'd sub nom. Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27 (2d Cir. 2003).[16]

Fourth, Plaintiff has caused needless expense to other parties and posed an unnecessary burden on the courts and their personnel by filing multiple lawsuits premised on the same facts. *See Almazon v. JPMorgan Chase Bank*, No. 24-CV-05415, 2025 WL 736565, at *17 (S.D.N.Y. Jan. 31, 2025) (fourth factor weighed in favor of pre-filing injunction where opposing counsel had to defend four meritless cases over span of almost six years), *report and recommendation adopted*, 2025 WL 720545 (S.D.N.Y. Mar. 6, 2025), *appeal dismissed*, No. 25-735, (2d Cir. Apr. 3, 2026); *Eliahu*, 919 F.3d at 715 (fourth factor favored injunction where defendants had to repeatedly defend themselves against frivolous lawsuits in four courts).

Fifth, there do not appear to be other adequate sanctions. Monetary sanctions will not suffice because Defendants assert that Plaintiff has still not paid the judgment entered against him in Surrogate's Court, as modified by the Appellate Division. (*See* Ds' Mem. at 12.) *See Neshewat v. Salem*, 365 F. Supp. 2d 508, 529 (S.D.N.Y. 2005) (filing injunction appropriate remedy where monetary sanctions are inadequate because plaintiff failed to pay judgment previously entered against him), *aff'd*, 194 F. App'x 24 (2d Cir. 2006) (summary order). And requiring Plaintiff to obtain leave of this Court before filing in this District is an appropriate and "less drastic remedy" than a complete filing ban. *In re Martin-Trigona*, 9 F.3d 226, 229 (2d Cir.

[16] That Plaintiff has counsel arguably cuts both ways. If Plaintiff were unrepresented, the third factor would weigh in his favor, *see Iwachiw v. N.Y.C. Bd. of Educ.*, 194 F. Supp. 2d 194, 208 (E.D.N.Y. 2002), so the fact that he has counsel does not weigh in his favor. But because one would expect ethical counsel to refuse to pursue precluded claims, this factor is arguably neutral, even though Plaintiff surely knew he was bringing claims on which he had already lost.

1993) (requiring a vexatious litigant to obtain leave of court for future filings was appropriate); *see Almazon*, 2025 WL 736565, at *15 (requiring leave of court is less drastic remedy that adequately protects the courts).

In sum, each factor weighs in favor of a pre-filing injunction. Therefore, in any future filings in this District, Plaintiff must obtain leave of this Court for any claims relating to any claim of ownership in the trademarks "Gangstarr," "Gang Starr," "Jazzmatazz," or "Guru's Jazzmatazz," or any claim of ownership in Ill Kid Music, Inc., Guru Productions, Inc., or Gang Starr Productions, Inc., or any claim to royalties or other income from those entities, or any claim arising from or related to the Estate.[17]

2. <u>State Court Injunction</u>

The Court declines to extend the pre-filing injunction to New York State courts. "[A]buse of state judicial processes is not *per se* a threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests." *In re Martin-Trigona*, 737 F.2d 1254, 1263 (2d Cir. 1984); *see Neshewat*, 365 F. Supp. 2d at 530 (declining to extend filing injunction to state courts). While the "blanket extension of [a filing] injunction to state courts" may be improper, *In re Martin-Trigona*, 737 F.2d at 1263, courts have permitted other filing requirements, such as requiring plaintiffs to append documents regarding their litigation history when commencing or intervening in a lawsuit in state court, *see Ulysses I & Co*, 2002 WL 1813851, at *16. In fact, the Second Circuit has held that alerting state courts to a litigious plaintiff's "past activities so they may take judicial notice of matters relevant to new litigation

---

[17] The requested injunction is broad, covering any claims related to the Estate, but the Court finds it justified based on (1) Plaintiff's litigation history, including misrepresenting to one court the findings of another; (2) his failure to object to the scope of the proposed injunction; and (3) the fact that the injunction does not preclude a lawsuit, but merely requires that he ask permission first – which permission would be forthcoming if the claims were legitimate.

brought by him" is consistent with "a spirit of cooperative federalism." *In re Martin-Trigona*, 737 F.2d at 1263. Thus, in any future pleadings Plaintiff files in any New York State court relating to any claim of ownership in the trademarks "Gangstarr," "Gang Starr," "Jazzmatazz," or "Guru's Jazzmatazz," or any claim of ownership in Ill Kid Music, Inc., Guru Productions, Inc., or Gang Starr Productions, Inc., or any claim to royalties or other income from those entities, or any claim arising from or related to the Estate, Plaintiff must attach a copy of this order.

3. Applicability of Pre-Filing Injunction to Denise Sandoval

Under FRCP 65(d)(2)(C), non-parties "who are in active concert or participation with" the parties or the parties' officers, agents, servants, employees or attorneys may also be bound by an injunction. "[C]ourts have carefully distinguished between entering an injunction against a non-party, which is forbidden, and holding a non-party in contempt for aiding and abetting in the violation of an injunction that has been entered against a party, which is permitted." *Havens v. James*, 76 F.4th 103, 111 (2d Cir. 2023). The purpose of this language is "to give force to injunctions and prevent parties from violating them by proxy through aiders and abettors not parties to the original proceeding." *N. Atl. Operating Co. v. Evergreen Distributors, LLC*, No. 13-CV-4974, 2013 WL 5603596, at *2 (E.D.N.Y. Oct. 11, 2013). "A non-party may be found to be legally identified with an enjoined party where, as a practical matter, the two individuals or entities are one and the same." *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09-CV-6148, 2012 WL 12932049, at *39 (S.D.N.Y. July 17, 2012), *report and recommendation adopted sub nom. Cardell Fin. Corp. v. Suchodolksi Assocs., Inc.*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012); *see State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, No. 21-CV-5523, 2023 WL 7181653, at *4 (E.D.N.Y. Sep. 13, 2023) (active concert exists between an

enjoined party and non-party where they are "substantially intertwined," which includes sharing office space, control by enjoined party over non-party, and "other substantial interconnections").

Defendants request that the injunctive relief also apply to Ms. Sandoval. (Ds' Mem. at 15-16.) The relationship between Plaintiff and Ms. Sandoval is unclear, but their actions suggest that they act in concert. Ms. Sandoval has filed multiple letters and affidavits in this case. (*See* ECF Nos. 15-2, 16, 33-1.) Moreover, Plaintiff and Ms. Sandoval supplied the registered address on the allegedly fraudulent biennial statement filings, (*see* ECF No. 20-1 at 24, 26), and Defendants claim that she has filed trademark applications for marks of which Plaintiff has unsuccessfully alleged ownership in several actions, (Ds' Mem. at 11). Moreover, the cease-and-desist letter and attorney grievance against Ms. Grant attached to Ms. Sandoval's August 28, 2025 letter are both dated August 22, 2025, the same date Ms. Grant claims Plaintiff sent communications threatening to file a formal grievance. (*See* ECF No. 16 at 2, 7-8; ECF No. 20-2.) Most recently, Ms. Grant also alleges that Mr. Coffy claimed to represent Ms. Sandoval regarding claims duplicative to this litigation. (*See* ECF No. 32-6.)[18] Thus, the facts suggest Plaintiff and Ms. Sandoval are "substantially intertwined." *See State Farm Mut. Auto. Ins. Co.*, 2023 WL 7181653, at *4.

Nevertheless, because Ms. Sandoval is a non-party, the Court will not extend the injunction to her or issue an order to show cause directed to her. *See Havens*, 76 F.4th at 111. But to the extent that she seeks to bring an action premised on claims precluded by earlier litigation, she could be sanctioned for contempt should the Court find that her actions violated

[18] In addition, in a different state court proceeding, Plaintiff filed a complaint on behalf of his son and stated that he and Ms. Sandoval are the son's parents and were granted guardianship of him in 2022. Complaint ¶ 3, *Mosher v. Kagan*, No. 036376/2025 (Sup. Ct. Rockland Cnty. 2025), ECF No. 1.

the injunction because they were undertaken to benefit or assist Plaintiff in violating the injunction. *See id.* at 116. So that she and Plaintiff are aware of the possible consequences, the Court directs Mr. Coffy to serve a copy of this order on Plaintiff and separately on Ms. Sandoval no later than November 3, 2026 and to file on the docket a certificate of service attesting to the same no later than November 5, 2026.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for sanctions is GRANTED in part and DENIED in part. Defendants are directed to submit an affidavit, with underlying records, documenting the costs and fees incurred in connection with this action and this motion, no later than November 13, 2026. Plaintiff and Mr. Coffy may respond no later than November 27, 2026, addressing only the reasonableness of the requested fee. In any future filings in this District, Plaintiff must obtain leave of this Court for any claims relating to any claim of ownership in the trademarks "Gangstarr," "Gang Starr," "Jazzmatazz," or "Guru's Jazzmatazz," or any claim of ownership in Ill Kid Music, Inc., Guru Productions, Inc., or Gang Starr Productions, Inc., or any claim to royalties or other income from those entities, or any claim arising from or related to the Estate. In any future pleadings in any New York State court relating to the aforementioned claims, Plaintiff must attach a copy of this order. The Court declines to extend the pre-filing requirements to Ms. Sandoval, but Mr. Coffy is, as set forth above, directed to serve a copy of this order on Ms. Sandoval as well as Plaintiff no later than November 3, 2026 and to file a on the docket a certificate of service attesting to the same no later than November 5, 2026. The Clerk of Court is respectfully directed to terminate the pending motion. (ECF No. 31.)

**SO ORDERED.**

Dated: October 30, 2026
White Plains, New York

Cathy Seibel
CATHY SEIBEL, U.S.D.J.